**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| BYRON LOVE-COOPER, | |
| Plaintiff. | Civil Action No. 23-5005 |
| v. | |
| GERMANTOWN FRIENDS SCHOOL COMPANY, | PLAINTIFF REQUESTS TRIAL BY JURY |
| Defendant. | |

**CIVIL ACTION COMPLAINT**

Plaintiff, Byron Love-Cooper, by and through his attorneys, Derek Smith Law Group, PLLC, hereby files the following civil action complaint against Defendants, Germantown Friends School Company (hereinafter "Defendants") for violations of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 20003-17 (amended in 1972, 1978, by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), and 42 U.S.C. § 1981.

**PARTIES**

1.     Plaintiff, Byron Love-Cooper ("Mr. Love" or "Plaintiff") is an adult individual who resides in the Commonwealth of Pennsylvania, City of Philadelphia.

2.     Defendant, Germantown Friends School Company is a business organization which is licensed to and regularly transacts business in the Commonwealth of Pennsylvania, in the City of Philadelphia, with offices for the purposes of service at 31 W. Coulter Street, Philadelphia, PA 19144.

3.     At all times material to this Charge, Plaintiff, Byron Love-Cooper was qualified for the position of his employment.

4.     At all times relevant to this Charge, Plaintiff was employed by Defendant, and both Plaintiff and Defendant agreed that Plaintiff was a w2 employee.

5.     At all times relevant to this civil action complaint, Defendants employed more than twenty people and were subject to the federal antidiscrimination statutes including Title VII and § 1981.

## JURISDICTION AND VENUE

6.     Jurisdiction of this action is conferred upon this Court pursuant to a Federal Question under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

7.     This Court also has supplemental jurisdiction over the State causes of action, however, Plaintiff causes of action under the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO") are not yet ripe for suit.  They will be ripe in or around April 2024, which is approximately one year after Plaintiff filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and dual filed the Charge with the Pennsylvania Human Relations Commission ("PHRC") and the Philadelphia Commission on Human Relations ("PCHR").

8.     Venue is proper in this district because the actions giving rise to this Complaint occurred within the County of Philadelphia, in the Commonwealth of Pennsylvania, which is within the jurisdiction of the Eastern District of Pennsylvania.

9.     Plaintiff has exhausted his administrative remedies by filing a Charge with the Equal Employment Opportunity Commission ("EEOC"), and receiving a Dismissal and Notice of Rights, otherwise known as a Right to Sue letter.

10.    Plaintiff dual filed his Charge of Discrimination with the Philadelphia Commission on Human Relations and the Pennsylvania Human Relations Commission.

11.    Plaintiff will amend this civil action to include counts under the PHRA and the PFPO, when Plaintiff is legally permitted to do so, which will occur in or around April 2024.

## MATERIAL FACTS

12.    Around November 11, 2020, Plaintiff, Byron Love Cooper began his employment with Defendant as a Housekeeping Supervisor and Events Set-Up.

13.    At all times relevant, Plaintiff, Byron Love Cooper worked in Defendant's Philadelphia headquarters, located at 31 West Coulter Street, Philadelphia, PA  19144.

14.    From the beginning of Plaintiff, Byron Love Cooper's employment, he was subjected to discrimination and harassment in the workplace due to his race and religion.

15.    At all times relevant to this Charge, Plaintiff was a black, African American male and devout member of the Muslim religion.

16.    Part of Plaintiff's observance of the Muslim religion requires Plaintiff to pray on a daily basis.

17.    While praying, Plaintiff observes certain practices of the Muslim religion including: The place and mat of Prayer must be neat and clean. The body must be properly covered during the Prayer. Qiblah or Direction: All Muslims must face towards the Ka'bah. Qiblah means facing the Ka'bah in Makkah, the first House of worship built on earth.

18.    Plaintiff informed his supervisors who were employees of Defendants that Plaintiff was a member of the Muslim religion and that Plaintiff would have to pray in accordance with his religious practices during work hours.

19.    Plaintiff requested accommodations in order to pray and specifically Plaintiff asked for a place where Plaintiff could pray during work hours.

3

20.    Plaintiff was repeatedly targeted for adverse action including suspension and termination due to Plaintiff's membership in a protected class based upon race, religion, and due to Plaintiff's reports of and opposition to the discrimination and harassment in the workplace.

21.    Plaintiff was threatened with discipline and subjected to discipline in the workplace based on Plaintiff's race and religion.

22.    Plaintiff reported the discrimination and harassment in the workplace and thereafter, Plaintiff was subjected to retaliation.

23.    Plaintiff was constantly subjected to disrespectful, abusive conduct and comments.

24.    Plaintiff was subjected to intimidation and threats that would ultimately lead to Plaintiff's unlawful termination from employment.

25.    Defendant terminated Plaintiff based on information that Defendants knew or should have known was false.

26.    Defendant used false information to justify the unlawful conduct and comments and to justify the unlawful termination of Plaintiff.

27.    Defendant's reason for Plaintiff's termination is pretext that Defendants used as an excuse to justify what was unlawful and based on Plaintiff membership in a protected class.

28.    Plaintiff engaged in protected activity by reporting and opposing the discrimination and harassment in the workplace.

29.    Defendant's stated reasons for Plaintiff's termination is mere pretext, presented for the unlawful purpose of hiding or justifying a discriminatory act.

30.    Plaintiff is no longer employed today due to Defendant's singling Plaintiff out for termination based on unlawful discriminatory intent.

31.    Defendant subjected Plaintiff to nonstop abusive, discriminatory conduct and comments such that Plaintiff was forced to endure a hostile work environment.

4

32.    The hostile discriminatory conduct and comments were severe and pervasive and had the purpose and effect of unreasonably interfering with Plaintiff's work environment.

33.    On multiple occasions, Defendant and Defendant's agents and employees accused Plaintiff of trespassing and ordered Plaintiff to leave the school.

34.    This abusive conduct, and the discriminatory comments, and orders were due to Plaintiff being an African American male who was singled out and targeted because of race.

35.    Plaintiff wore business attire and a company I.D. badge while Plaintiff was working.

36.    It was apparent by Plaintiff's visual appearance that Plaintiff was an employee of Germantown Friends School and that Plaintiff was working and not engaged in any criminal conduct.

37.    Notwithstanding Plaintiff's appearance and conduct, Defendants accused Plaintiff of engaging in criminal conduct and threatened Plaintiff while Plaintiff was working.

38.    This occurred on multiple occasions and significantly interfered with Plaintiff's work environment.

39.    Defendant employed white, Caucasian employees who singled Plaintiff out and targeted Plaintiff due to Plaintiff race and religion.

40.    Plaintiff was confronted and yelled at on multiple occasions by while, Caucasian employees who ordered Plaintiff to leave the property and accused Plaintiff of criminal trespass.

41.    Defendant and Defendant's employees called the police on Plaintiff and presented a false report about Plaintiff to the police.

42.    Defendant and Defendant's employees accused Plaintiff of entering the school grounds without authorization and trespassing.

43. This was hardly a one-time occurrence and Plaintiff had to work within this extremely discriminatory environment where white, Caucasian employees accused Plaintiff of not belonging and ordering Plaintiff to leave the property because of the color of Plaintiff's skin.

44. White and Caucasian employees were never subjected to this kind of abusive, hostile work environment.

45. Defendant subjected Plaintiff to discriminatory conduct and comments because of Plaintiff's religion.

46. Defendant and Defendant's employees refused to provide Plaintiff with religious accommodations so that Plaintiff could observe his Muslim faith.

47. In Islamic law, prayer is considered an obligatory act of worship that Muslims must perform five times a day at specific times.

48. Therefore, Plaintiff needed to pray at work and notified Defendant of this religious requirement and asked to take breaks from work duties for prayer.

49. This was a reasonable request that posed no hardship on Defendant and did not interfere with Plaintiff's ability to perform the responsibilities of his employment.

50. Still, Defendant refused to provide this religious accommodation to Plaintiff.

51. Defendant had no issue proving white, Christian employees with a place where they could pray to Jesus and their God.

52. Defendant refused to allow Plaintiff to pray to Allah.

53. It was apparent by Defendant and Defendant's employees that there was a distain for Plaintiff and Plaintiff's religion. This was obvious by the way in which Plaintiff was treated versus the way in which white, Christian employees were treated.

54. Students and employees who were members of the Christian religion were provided with almost unlimited accommodations to observe their Christian faith.

55.    At the same time, Defendant and Defendant's employees and agents acted in a manner that clearly indicated distain for Plaintiff due to Plaintiff's race and religion.

56.    Plaintiff was subjected to a hostile work environment and singled out and subjected to severe and pervasive conduct and comments that significantly interfered with Plaintiff's work environment and Plaintiff's ability to go to work without being accused of a criminal activity and free from discriminatory treatment and racial animus.

57.    Plaintiff feared for his safety and wellbeing due to the false police reports that were made in connection with Plaintiff's presence at the School, while Plaintiff was working and during work hours.

58.    Defendant also acted with religious animus toward Plaintiff's faith.

59.    Plaintiff engaged in protected activity by opposing and reporting the discrimination and harassment in the workplace however this resulted in the discrimination and harassment getting worse.

60.    After Plaintiff's reports or and opposition to the discrimination and harassment in the workplace, Defendant ratcheted up the hostile work environment.

61.    Plaintiff was subjected to false allegations of criminal conduct.

62.    Plaintiff was subjected to false accusations and false police reports.

63.    Plaintiff was subjected to false discipline and termination.

64.    As a result of Defendant's conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

65.    As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

66. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation which such employment entails.

67. Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

68. Plaintiff has further experienced severe emotional and physical distress.

69. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendant, jointly and severally.

70. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

71. Defendant at all times refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment and hostile work environment.

72. Defendant's discriminatory conduct was severe and pervasive, created a hostile work environment for Plaintiff.

73. The above are just some of the examples, of the discrimination and retaliation to which Defendant subjected Plaintiff.

74. Upon information and belief, Defendant's discrimination and retaliation will continue after the date of this complaint and claimant hereby makes a claim for all continuing discrimination and retaliation.

75. Plaintiff further claims actual discharge to the extent he was terminated from his position as a result of the retaliation and harassment.

76. Plaintiff claims a practice of discrimination and claims.

8

77. Defendant's continuing violations and makes all claims herein under the continuing violations doctrine.

78. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

79. Plaintiff was subjected to adverse employment actions including being denied pay raises and promotions, having his hours reduced and other changes to the terms and conditions of Plaintiff's employment.

**COUNT I**
**FOR DISCRIMINATION UNDER TITLE VII**
**(HOSTILE WORK ENVIRIONMENT AND DISPARATE TREATMENT)**

80. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

81. Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

82. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff because of his race and religion.

83. Plaintiff was subjected to adverse employment action and hostile work environment due to his religion.

84. Plaintiff requested religious accommodations that were denied to Plaintiff without an interactive process.

85.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race and religion.

86.     SEC. 2000e-2. [Section 703] states as follows:

(a) Employer practices

It shall be an unlawful employment practice for an employer -
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment. opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of his religion.

87.     Plaintiff was unlawfully terminated from his employment due to Plaintiff's race and religion.

88.     Plaintiff was subjected to disciplinary action that was based on pretextual excuses to hide the fact that Plaintiff was the target of discrimination and retaliation.

10

## COUNT II
## RETALIATION UNDER TITLE VII
### (against corporate Defendants only)

89.     Plaintiff hereby incorporates all allegations contained in the proceeding paragraphs as fully as if they were set forth at length.

90.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

91.     Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges of his employment because of his opposition to and reporting of the unlawful employment practices of Defendants.

92.     Defendants acted against Plaintiff due to Plaintiff's opposition to Defendants' discrimination and harassment of Plaintiff.  Defendants also acted against Plaintiff due to Plaintiff's protected activity in reporting and opposing discrimination.

## COUNT III
## UNDER FEDERAL LAW
## 42 U.S.C. SECTION 1981

93.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

94.     42 U.S.C. Section 1981 states in relevant part as follows:

a. Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of

11

persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

95.    Plaintiff, because of his race was discriminated against by Defendant because of his race in violation of 42 U.S.C. Section 1981 and has suffered damages as set forth herein.

96.    Plaintiff also claims unlawful retaliation under 42 U.S.C. Section 1981 for his opposition to Defendants' unlawful employment practices.

97.    Plaintiff claims hostile work environment under 42 U.S.C. Section 1981.

98.    The discrimination and harassment due to Plaintiff's race was severe and pervasive and interfered with Plaintiff's work environment.

99.    The discriminatory conduct was severe and pervasive both objectively and subjectively.

100.    Plaintiff also claims disparate treatment under 42 U.S.C. Section 1981 in connection with false discipline and termination.

101.    Plaintiff was subjected to discrimination based on race which led to the adverse employment actions described herein.

102.    Defendants have no legitimate nondiscriminatory reason for the disparate treatment to which Plaintiff was subjected.

103.    Plaintiff was subjected to violations of Section 1981, when Defendant subjected Plaintiff to disparate treatment, hostile work environment and retaliation.

104.    Plaintiff's claims under Section 1981 are based on the fact that Plaintiff, belongs to a racial minority.

105.    At all times related to this civil action, Plaintiff was and remains a member of the Black, African American race.

106.    During the course and scope of Plaintiff's employment, Defendants intentionally subjected Plaintiff to discrimination and harassment in the workplace due to race.

107.    Plaintiff was subjected to continuous conduct race-based and comments described within this civil action.

108.    The race-based discrimination and harassment in the workplace to which Plaintiff, was subjected occurred with severity and frequency such that Plaintiff was subjected to a hostile work environment due to the severity and pervasiveness of the abusive, race-based discriminatory comments and conduct.

109.    The intentional discrimination and harassment in the workplace that was based on Plaintiff's race had the purpose and effect of unreasonably interfering with Plaintiff's work environment such that Defendants materially changed the terms and conditions of Plaintiff's work environment.

110.    The race discrimination led to a loss of pay and other benefits.

111.    Plaintiff was singled out and subjected to discrimination because of race such that Plaintiff was deprived money that Plaintiff should have been paid but for the intentional discrimination.

112.    Plaintiff has been deprived raises that Plaintiff should have received but for the discrimination.

113.    Plaintiff has been deprived benefits that Plaintiff would have received but for the discrimination.

114.    Plaintiff's claims under Section 1981 are to redress the injuries to which Plaintiff has been subjected by Defendants including injuries caused by disparate, race-based treatment.

115.    Plaintiff's claims under Section 1981 are to redress the injuries to which Plaintiff has been subjected by Defendants including injuries caused by the ongoing, severe and pervasive hostile work environment.

116.    Plaintiff's claims under Section 1981 are to redress the injuries to which Plaintiff has been subjected by Defendants including injuries caused by Defendants' retaliation which continues to the present and includes retaliation based on Plaintiff asserting his rights to be free of a workplace that is permeated with race-based discrimination and harassment in the workplace.

117.    Congress enacted the Civil Rights Act of 1991, which was designed to supersede *Patterson, see Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383, 124 S.Ct. 1836, 158 L.Ed.2d 645, by explicitly defining § 1981's scope to include post-contract-formation conduct, § 1981(b). (4) Since 1991, the Federal Courts of Appeals have uniformly interpreted § 1981 as encompassing retaliation actions. *Sullivan*, as interpreted by *Jackson*, as well as a long line of related cases where the Court construes §§ 1981 and 1982 similarly, lead to the conclusion that the view that § 1981 encompasses retaliation claims is well embedded in the law. Stare decisis considerations strongly support the Court's adherence to that view. Such considerations impose a considerable burden on those who would seek a different interpretation that would necessarily unsettle many Court precedents. Pp. 1954 – 1958. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 128 S. Ct. 1951, 1953, 170 L. Ed. 2d 864 (2008).

14

118.    42 U.S.C. § 1981 and specifically § 1981(a), and subsection, (b), defines what it means to "make and enforce contracts" under the law:

> "Make and enforce contracts' defined:  "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

119.    Plaintiff's claims under § 1981 are based on Defendants' race-based conduct and comments and race-based discrimination that violated Plaintiff's employment contract through ongoing, continuous harassment and failing to treat Plaintiff in the same manner to which Plaintiff's similarly situated coworkers who were not members of Plaintiff's race were treated, which includes lost benefits, lost pay, lost promotions, and other losses which are identified herein.

120.    The Supreme Court of the United States has concluded that, "Among other things, it would "ensure that Americans may not be harassed, fired or otherwise discriminated against in contracts because of their race." *Ibid.* (emphasis added). … It added that the protections that subsection (b) provided, in "the context of employment discrimination ... would include, but not be limited to, claims of harassment, discharge, demotion, promotion, transfer, retaliation, and hiring." *Id.*, at 92 *451 emphasis added). It also said that the new law "would restore rights to sue for such retaliatory conduct." *Id.*, at 93, n. 92.  *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 450–51, 128 S. Ct. 1951, 1957, 170 L. Ed. 2d 864 (2008).

121.    Accordingly, Plaintiff's claims under Section 1981 are based on Defendants' intentional harassment of Plaintiff due to Plaintiff's race and Plaintiff suffering damages due to lost pay, lost benefits and due to Defendants' retaliation because Plaintiff engaged in protected activity and has attempted to vindicate his rights under the law.

15

122.    Plaintiff was singled out because of race and subjected to severe and pervasive race-based comments which were designed to be abusive and to subject Plaintiff to an abusive working environment.

123.    Plaintiff reported the discrimination and was subjected to a ratcheting up of the race-based discrimination which at all times was intentional discrimination that was directly related to Plaintiff's race.

## JURY DEMAND

Plaintiff requests a jury trial on all issued to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, economic damages, compensatory damages, punitive damages, liquidated damages, statutory damages, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

By:    _/s/ Seth D. Carson_
         Seth D. Carson, Esquire
         1835 Market Street, Suite 2950
         Philadelphia, Pennsylvania 19103
         Phone: 215.391.4790
         Email: seth@dereksmithlaw.com

DATED: December 18, 2023

16